UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARC WEINREICH, an individual,<br><br>    Plaintiff<br><br>        v.<br><br>CYNTHIA BROOKS, an individual; GREENFIELD ENVIORMENTAL TRUST GROUP, INC., a Massachusetts Corporation; DAVID DABNEY, an individual; and DOES 1-3<br><br>    Defendants. | Case No. 1:21-cv-10496-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GREENFIELD ENVIRONMENTAL TRUST GROUP INC.'S MOTION TO COMPEL**

**I.     INTRODUCTION**

Defendant Greenfield Environmental Trust Group, Inc. ("Greenfield" or the "Company") submits this Memorandum of Law in Support of it Motion to Compel. Greenfield respectfully requests that the Court (1) order Plaintiff Marc Weinreich ("Plaintiff") to produce emails Plaintiff sent from the Greenfield server to his personal counsel representing him in his disputes with Greenfield and Defendant Cynthia Brooks ("Brooks") that are listed on his privilege log (the "Privilege Log Emails"); and (2) rule that additional emails Plaintiff sent using the Greenfield server to his fiancé,[1] Joanna Pincus ("Pincus") (also a Greenfield employee) (the "Fiancé Emails") are not protected by spousal privilege.

As detailed below, the Privilege Log Emails are not protected by the attorney-client privilege because (a) Plaintiff sent the emails from his Greenfield company email address and he

---

[1] Plaintiff's counsel has represented that Pincus is Plaintiff's fiancé.

had no reasonable expectation of privacy, and (b) Plaintiff waived the attorney-client privilege by including a non-party (Pincus) on these emails. Furthermore, the Fiancé Emails are not protected by spousal privilege because (a) Plaintiff and his fiancé were not married at the time of the emails, and (b) spousal privilege does not apply to written communications.

## II.     FACTUAL BACKGROUND

### A.  Plaintiff's employment at Greenfield and lawsuit against Greenfield.

Greenfield is a court-designated environmental response and custodial trustee that works to clean up contaminated sites throughout the country. *See* Complaint, Dkt. No. 3, pp. 1-2. Plaintiff is a former 49% owner, board member and employee of Greenfield. *See id*, ¶¶ 12, 17. Plaintiff is also an attorney, who is licensed to practice law in Massachusetts. *See* Dkt. No. 49, Declaration of Marc Weinreich, ¶ 9.

Plaintiff retained personal counsel in or around April 2019 in connection with certain disputes with Greenfield and Brooks, the 51% shareholder. *See* Exhibit A, Plaintiffs' Privilege Log (logging emails between Plaintiff and personal counsel beginning in April 2019).

Plaintiff resigned from Greenfield in September 2019. *See* Complaint, Dkt. No. 3, ¶ 79. Plaintiff filed suit against Greenfield and Brooks on November 1, 2019. *See id*., at p. 24.

### B.  The Privilege Log Emails.

Between April 5, 2019 (while Plaintiff was still employed at Greenfield) and January 31, 2020, Plaintiff used his Company email address to communicate with his personal counsel about his disputes with and lawsuit against Greenfield. *See* Ex. A. Plaintiff claims these Privilege Log Emails are protected by the attorney-client privilege. *See id*. Many of the Privilege Log Emails copy or include as a recipient Pincus, who, at the time of the emails, was also a Greenfield

employee.[2] *See id.*

### C. The Fiancé Emails.

In addition to the Privilege Log Emails, Plaintiff also exchanged emails using his Company email address with Pincus on which his personal counsel was *not copied or included as a recipient*. Plaintiff's counsel has informed Greenfield's counsel that they consider emails on which Pincus is the sole recipient, or is copied on emails to his counsel, to be protected by "spousal privilege." Regardless of the status of the relationship between Plaintiff and Pincus, Pincus was employed by the Company for ten years (and Plaintiff was also employed by the Company for most of that time) and exchanged countless emails using the Company server during that time. For the Plaintiff to now argue that such emails are subject to the spousal privilege is unreasonable and overreaching. Although Greenfield disagrees that spousal privilege applies to these Fiancé Emails, it agreed not to review the contents of the Fiancé Emails until the Court rules on this Motion to Compel.

### D. Greenfield's Computer Information Policy.

At the time Plaintiff sent the Privilege Log Emails, Company policy stated that all work-related information on Company computer systems was the property of Greenfield:

> As Greenfield property, your computer and its associated hardware and software must be returned to the company on demand. **All work-related information and products are the property of Greenfield**, and are subject to the document retention obligations set forth in the various Trust agreements. As a result, all data on the computer must be retained, consistent with those requirements.

*See* Exhibit B, New Employee Orientation Guide, January 30, 2018 (emphasis added).[3]

Additionally, prior to leaving the Company, Plaintiff was the Administrator for the Company email

---

[2] Two of the Privilege Log Emails are between Plaintiff's personal gmail.com email address and his personal counsel. *See* Ex. A, at BegDoc. 16, 56. However, one of these emails copies Pincus. *See id.*, at BegDoc. 56. Greenfield is not seeking to compel the disclosure of the one Privilege Log Email between Plaintiff's personal gmail.com address and his personal counsel that does not include Pincus. *See id.*, at BegDoc. 16.

[3] The New Employee Orientation Guide contains confidential Company and employee information. Accordingly, only the portion of the document directly relevant to this motion is included as Exhibit B.

system with access to all Company emails.

### E. Local Rule 7.1(a).

After this litigation commenced, Greenfield's counsel informed Plaintiff's personal counsel that Plaintiff had sent emails from his Company email address to his personal counsel—i.e., the Privilege Log Emails. Although Plaintiff and Greenfield disagreed concerning the privileged status of these emails, they agreed to the following procedure, which they memorialized in the October 22, 2021 letter agreement attached as Exhibits C and D: (1) Plaintiff would hire a vendor to segregate and separate emails between Plaintiff and his personal counsel that were transmitted from Greenfield's server; (2) the vendor would forward the Privilege Log Emails to Plaintiff's personal counsel, but the Privilege Log Emails remained sequestered from Greenfield's counsel; (3) Plaintiff agreed to produce a privilege log (the privilege log identified all of the Privilege Log Emails); and (4) Defendant would move to compel. Pursuant to the letter agreement, only Plaintiff's personal counsel has viewed the Privilege Log Emails.

Greenfield's counsel recently discovered that Plaintiff had sent drafts of certain Privilege Log Emails to Pincus, i.e., the Fiancé Emails (Plaintiff's personal counsel was *not* copied on these Fiancé Emails). Greenfield's counsel disclosed this to Plaintiff's personal counsel. Plaintiff's counsel requested Greenfield's counsel not to review the Fiancé Emails on which Plaintiff's counsel was copied, or on which Pincus was the sole recipient. There is no privilege log for the Fiancé Emails, but for the convenience of the Court, the parties have agreed to address their privilege status in the same motion as the Privilege Log Emails.

### III. ARGUMENT

#### A. The Privilege Log Emails are not protected by the Attorney-Client Privilege.

The First Circuit has held that the attorney-client privilege exists "(1) [w]here legal advice

of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997) (quoting 8 J. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev.1961)); *see also Commissioner of Revenue v. Comcast Corp.*, 453 Mass. 293, 303 (2009).

The attorney-client privilege is construed narrowly to ensure full disclosure of relevant evidence. *See Commissioner of Revenue v. Comcast Corp.*, 453 Mass. 293, 303 (2009) ("[W]e have consistently held that we construe the privilege narrowly, in part to protect the competing societal interest of the full disclosure of relevant evidence."); *Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda)*, 425 Mass. 419, 421 (1997) (attorney-client privilege "ordinarily strictly construed"); *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, 424 Mass. 430, 457 n. 26 (1997) ("We must, however, construe the privilege narrowly.").[4]

"The burden of proving that the attorney-client privilege applies to a communication rests on the party asserting the privilege." *Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda)*, 425 Mass. 419, 421 (1997). "This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including: (1) the communications were received from a client during the course of the client's search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these

---

[4] Federal courts apply forum state choice of law in deciding issues of privilege in diversity cases such as this one. *See Command Transp., Inc. v. Y.S. Line (USA) Corp.*, 116 F.R.D. 94, 95 (D. Mass. 1987). Because the communications at issue here took place over the server of a Massachusetts corporation and concern the ownership and governance of that corporation, Massachusetts law applies. *See id*.

communications has not been waived." *Id.* (citing *Colonial Gas Co. v. Aetna Cas. & Sur. Co.,* 144 F.R.D. 600, 604 (D.Mass.1992); *In re Grand Jury Subpoena (Zerendow),* 925 F.Supp. 849, 855 (D.Mass.1995)).

Here, Plaintiff cannot meet his burden of proving that the attorney-client privilege applies to the Privilege Log Emails because they do not constitute communications made in confidence. This is because (1) the Privilege Log Emails were sent or received on Plaintiff's Company email address where he had no reasonable expectation of privacy, and (2) Pincus, a third party, was included on the Privilege Log Emails.

1. <u>The Privilege Log Emails between Plaintiff's Company email address and his personal counsel are not privileged.</u>

The Privilege Log Emails between Plaintiff's Company email address and his personal counsel are not privileged because Plaintiff had no reasonable expectation that the emails were private. An employee has no reasonable expectation of privacy from the Company's inspection of personal emails sent over the Company's email system, particularly where company policy designates information on the system as Company property. In *Garrity v. John Hancock Mut. Life Ins. Co.*, employees of John Hancock Mutual Life Insurance Company sent and received sexually explicit emails on the company's email system. *See Garrity*, 2002 WL 974676, **1-2 (D. Mass. 2002). The Court determined that the employees did not have a reasonable expectation of privacy from the company's inspection of the emails because a written company policy stated, in relevant part, that "[a]ll information stored, transmitted, received, or contained in the company's E-mail systems is the property of John Hancock." *Id.*, at **1-2 (citing *Smyth v. Pillsbury Co.*, 914 F. Supp. 97, 101 (E.D. Pa. 1996) (holding even in the absence of a company email policy, employees had no reasonable expectation of privacy with respect to their work email because "[o]nce plaintiff communicated the alleged unprofessional comments to a second person . . . over an e-mail system

6

which was apparently utilized by the entire company, an reasonable expectation of privacy was lost.")); *see also Nat'l Econ. Rsch. Assocs., Inc. v. Evans*, 2006 WL 2440008, at *3 (Mass. Super. Aug. 3, 2006) (Gants, J.) (holding emails sent by employee from his personal Yahoo email account to his personal counsel on his company laptop were privileged, but noting that if the same emails were sent from his company email address they would not be privileged because the company's computer information policy stated, in part, "[a]ll computer resources are the property of the Company.").

This case law is directly applicable here. Plaintiff, a sophisticated lawyer, owner and officer of the Company could not have reasonably expected that the emails he sent and received from his Company address were made in confidence.[5] As in *Garrity*, when Plaintiff sent and received the Privilege Log emails over Greenfield's system, the Company's policy explicitly stated that all work-related information on Greenfield's computer systems was the property of Greenfield. *See* Ex. B. As a consequence, Plaintiff must have realized that the emails could be reviewed and accessed by Greenfield.

Moreover, the "Subject" and "Description" fields in the privilege log confirm that the emails themselves are all work-related. For example, several of the emails identified in the privilege log contain subject lines indicating that they relate directly to Greenfield and its business—e.g., "Greenfield," "Greenfield Environmental Trust," "Greenfield - Notice of Special Meeting of Directors," "Multistate Trust--Possible Construction Contracts' Assignment," and "Private Investment Perspectives on Brownfield Redevelopment." *See* Ex B. Similarly, several of the emails identified in the privilege log contain descriptions that relate directly to Greenfield and

---

[5] The fact that Plaintiff used his personal gmail.com email address (and not his Company address) at times when communicating with his personal counsel further suggests that Plaintiff knew emails sent over Greenfield's system were not private. *See supra* footnote 1; Ex. A.

Defendant Brooks—e.g., "Email and attachments with counsel re: organizational charts," "Email with counsel re: historic relationship with Books," "Email with counsel re: recent communications with Brooks," "Email with counsel re: recent Email with Brooks," "Email with counsel re: Email from Greenfield re: contract assignment," "email with counsel re: recent discussions with Brooks," and "Email with counsel re: restructuring and Brooks-related issues." *See id*. Thus, the Privilege Log Emails all relate directly to Greenfield. They are not private emails concerning, for example, the purchase of a private property or the divorce of a family member.

Accordingly, the Privilege Log emails between Plaintiff's Company email address and his personal counsel are not privileged.

        2. <u>The Emails on which Pincus was copied or included as a recipient are not privileged.</u>

"Generally, disclosing attorney-client communications to a third party undermines the privilege." *Dahl v. Bain Cap. Partners, LLC*, 714 F. Supp. 2d 225, 227 (D. Mass. 2010) (quoting *Cavallaro v. United States*, 248 F.3d 236, 246 (1st Cir. 2002)) ("The presence of third parties during an attorney-client communication is often sufficient to undermine the 'made in confidence' requirement or to waive the privilege."). Specifically, copying a third party on emails between the client and attorney constitutes waiver of the attorney-client privilege. *See Dahl*, 714 F. Supp. 2d at 229 (allowing motion to compel and holding client waived the attorney-client privilege by copying its financial advisors on emails between itself and its lawyers). A limited exception to this rule exists for third parties, such as accountants, employed to assist a lawyer in rendering legal advice. *See id*. ("The circumstances under which the exception applies are limited."). However, to meet this limited exception, the third party must meet three requirements: (1) the third party is necessary, or at least highly useful, for the effective consultation between the client and the lawyer; (2) the third party plays an interpretive role to translate information between the client and the

attorney; and (3) the third party's communication must be made for the purpose of rendering legal advice. *See id*.

Here, Plaintiff waived the attorney-client privilege with respect to each of the emails on which Pincus was copied or included as a recipient. Pincus is a third party who does not meet any of the requirements of the limited exception to the third-party waiver rule. Pincus was not necessary for the effective consultation between Plaintiff and his personal counsel. Pincus did not play an interpretive role to translate information between Plaintiff and his personal counsel. Pincus was not copied on the Privilege Log Emails for the purpose of rendering legal advice. Accordingly, Plaintiff waived the attorney-client privilege with respect to the emails on which Pincus was copied or included as a recipient, and the Court should order Plaintiff to produce these emails.

### B. Spousal privilege does not apply to any email between Plaintiff and Pincus.

Plaintiff cannot assert that spousal privilege applies to any email between Plaintiff and Pincus—including the Fiancé Emails—because spousal privilege only protects the confidentiality of private communications made between spouses during marriage. *See, e.g., U.S. v. Wood*, 924 F.2d 339, 401 (1st Cir. 1991) (spousal privilege "protects the confidentiality of private communications made between spouses **during their marriage**") (emphasis added); *Com v. Barronian*, 255 Mass. 364, 366 (1920) (private conversations held before marriage are not protected); *see also United States v. Johnson*, 2008 WL 5378263, at *4 (D.S.D. Dec. 23, 2008) ("The Court's cursory review of federal case law found not a single case which had even addressed, much less adopted, Defendant's one-sentence argument for the extension of spousal privilege to include fiancés.").[6] Plaintiff and Pincus were not married at the time the subject emails were sent.

---

[6] Additionally, under Massachusetts law, spousal privilege applies only in criminal proceedings. *See In re Simon*, 587 B.R. 218, 221 (Bankr. D. Mass. 2018) ("[Spousal privilege] applies exclusively in criminal proceedings.").

Furthermore, spousal privilege does not apply to written communications. *See Brown v. Savings Bank Life Insurance Company*, 93 Mass. App. Ct. 572, 576 n. 8 (2018) ("[E]-mail is a written communication, and existing case law holds that **written communications are not subject to the martial disqualification**.") (emphasis added) (citing *Commonwealth v. Szczuka*, 391 Mass. 666, 678 n.14 (1984)). Additionally, as noted in Section II.C above, during the time Plaintiff and Pincus were both employed by the Company (spanning a period of almost ten years), they exchanged countless emails. It is unreasonable to argue that any emails sent on the Company server between Pincus and Weinreich are subject to the spousal privilege.

## IV. CONCLUSION

For all of the foregoing reasons, Greenfield respectfully requests that the Court grant the Motion to Compel, and (1) order Plaintiff to produce the Privilege Log Emails, and (2) rule that the Fiancé Emails are not protected by spousal privilege.

Respectfully submitted,

GREENFIELD ENVIORNMENTAL TRUST GROUP, INC.,

By its attorney,

*/s/ James L. Messenger*
James L. Messenger (BBO #547236)
jmessenger@gordonress.com
Gordon Rees Scully Mansukhani, LLP
21 Custom House Street
Boston, MA 02110
617-902-0098

Dated: December 1, 2021.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2021, a copy of the foregoing was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record

*/s/ James L. Messenger*
James L. Messenger
