**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARC WEINREICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-cv-10496-NMG |
| v. | ) |
| | ) The Honorable Nathaniel M. Gorton |
| CYNTHIA BROOKS; GREENFIELD | ) |
| ENVIRONMENTAL TRUST GROUP, INC.; | ) |
| DAVID DABNEY; and DOES 1-3 | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CYNTHIA BROOKS' MEMORANDUM IN SUPPORT OF HER FIRST MOTION TO COMPEL DISCOVERY FROM PLAINTIFF MARC WEINREICH[1]**

Defendant Cynthia Brooks ("Brooks") seeks to compel Plaintiff Marc Weinreich ("Weinreich") to produce (i) the complete forensic image he created of the laptop issued to him by Defendant Greenfield Environmental Trust Group, Inc. ("Greenfield" or the "Company")(the Laptop"), and (ii) related communications concerning the retention, imaging, and alteration of the device.

As set forth below, Weinreich improperly retained his Company-issued Laptop after his sudden resignation from the Company in mid-September 2019. Despite numerous requests, Weinreich refused to return the Laptop until January 2020. Before returning the Laptop (and without seeking permission from the Company), Weinreich engaged a third-party vendor (Salt Lake Legal) to create an image of the Company's device, thereby retaining for himself the confidential Company data contained on the Laptop. Following the creation of this forensic image, Weinreich (again without notifying, or asking permission from, the Company) instructed the

---

[1] Defendant Greenfield Environmental Group, Inc. joins in this Motion to Compel Discovery and has filed a separate joinder.

1

vendor to *wipe the Laptop clean* and reinstall a portion of the imaged files onto the Laptop. He then returned the altered Laptop to the Company. Weinreich has not identified the Company files he has retained. However, the Company retained Stroz Freidberg to perform a forensic analysis on the Laptop as it was returned to the Company, which indicates that approximately 5,000 folders that previously existed on the Laptop were emptied and/or altered before the device was returned to the Company.[2]   The Laptop as returned contained just 593 files, and no emails whatsoever. Weinreich has now produced certain emails from his Greenfield email account in the course of discovery in this matter, definitively establishing that he retained Greenfield email files in addition to whatever else may be on the image.

As a result of Weinreich's willful spoliation of data on the Company Laptop, the forensic image is the *only* source that may identify the specific Company data that was on the Laptop (and retained by Weinreich) after he left the Company. Importantly, any Company information on this forensic image *does not belong to Weinreich and he has no right to retain it*.[3] Weinreich terminated his employment with Greenfield on or around September 9, 2019, and he sold all his shares in the Company on September 30, 2020. Weinreich has no legitimate business justification for retaining Company information. Nonetheless, Weinreich refuses to return the Greenfield data on the unauthorized forensic image.

In her First Request for Production of Documents, Brooks, the sole owner of Greenfield, requested the complete forensic image of the Laptop, as well as related Company information in Weinreich's possession, including local copies of any emails, messages, notes, metadata, and documents concerning any actions to delete or alter the data on the device. (Exhibit 1). The

---

[2] Details of the work performed by Stroz Friedberg can be found in the Affidavit of Tara Brady, a Senior Consultant at Stroz Friedberg, filed herewith.
[3] Weinreich's actions constitute conversion and trade secret misappropriation of Greenfield property, which will be the subject of a later counterclaim.

Company has agreed that any files on the image that Weinreich contends are privileged can be identified and sequestered by a forensic vendor pending further review to determine whether such files should be produced.[4] In a discovery conference concerning this issue, plaintiff's counsel has taken the position that Weinreich will only produce files and documents from the forensic image to the extent such information is "relevant" to the litigation and responsive to discovery requests propounded on Weinreich. This stands the discovery process on its head. The forensic image contains *Company-owned* information that should be returned to Greenfield. Weinreich can then make discovery requests of the Company for discoverable information from these files, not the other way round.

Simply put, Weinreich has stolen Company data and he is now forcing Defendants to file a discovery motion to have it returned. Such behavior should not be countenanced by this Court.

Separately, in many of his responses to Brooks' Document Requests, Weinreich has stated that he will produce documents, but only to the extent such documents are "relevant." Weinreich refuses to identify the specific documents he is withholding on this ground. Brooks seeks an order requiring that Weinreich comply with his obligations under Fed. R. Civ. P. 34(b)(2)(C) by removing the relevance objections or identifying the specific "irrelevant" documents he is withholding.

Finally, Brooks seeks an order requiring that Weinreich produce all documents responsive to Request No. 62 of her First Request for Production of Documents, which seeks documents

---

[4] In particular, the Company suggests that a file listing report be generated by a third party vendor from the forensic image. Weinreich and his counsel may then review the file listing and identify any files they wish to withhold as privileged. Such files will be sequestered from the image prior to its return to the Company. The file listing, as annotated by Weinreich, will also be provided to Defendants in order to allow them the opportunity to move to compel any file they believe has been improperly withheld.

AFDOCS/25504587.1

relating to any request or invitation by Weinreich to Greenfield employees to stay in his home in Utah.

## I. FACTUAL BACKGROUND CONCERNING THE LITIGATION AND THE LAPTOP

### A. Weinreich's Employment and Resignation from Greenfield.

Greenfield provides professional services to the trustees of several court-designated environmental response and custodial trusts. Weinreich is a former 49% shareholder of Greenfield. At all relevant times, Brooks has been the majority owner of the Company. In connection with his work for the Company, Weinreich was issued a MacBook laptop computer (the "Laptop").

In or around 2018, Brooks learned of complaints from employees about Weinreich's behavior. In particular, employees claimed that Weinreich created a hostile work environment and otherwise acted inappropriately towards them. In order to address these complaints and to improve the operational efficiency of Greenfield's largest trust appointment (the Multistate Trust Environmental Response Trust or the "Multistate Trust"), the Company initiated a reorganization of the Multistate Trust in November 2018. At a meeting in July 2019 attended by Weinreich, the Greenfield board of directors voted to ratify the reorganization. He now alleges that the reorganization was designed to freeze him out of the Company. First Amended Complaint ("FAC"), ¶ 79.

On August 10, 2019, while still a Greenfield employee, Weinreich emailed Brooks, noting that he was likely to file litigation and that she should preserve digital and other information. (Exhibit 2). Counsel for Greenfield likewise reminded Weinreich of his obligation to preserve evidence in an email dated September 25, 2019. (Exhibit 3).

AFDOCS/25504587.1

Weinreich abruptly resigned his employment with the Company on or around September 9, 2019, informing a number of employees that he was leaving shortly thereafter. FAC, ¶ 160.[5] At the time of his departure from the Company the Greenfield Orientation Guide included the following language:

> Computer Hardware. Greenfield will provide you a MacBook notebook computer and associated hardware (external display, wireless trackpad and keyboard, and multifunction printer) and software for your use while you are an employee. . . . As Greenfield property, your computer and its associated hardware and software must be returned to the company on demand. All work-related information and products are the property of Greenfield, and are subject to the document retention obligations set forth in the various Trust agreements. As a result, all data on the computer must be retained, consistent with those requirements.

(Exhibit 4).

### B. Weinreich Refuses to Return His Company-Issued Laptop.

Following his resignation, David Dabney, an employee of the Company and the Multistate Trust Chief Operating Officer, flew to Salt Lake City on September 18, 2019 for the specific purposes of transitioning information and activities from Weinreich to Dabney and/or the Company; and taking custody of all Company property and files. On the day of the meeting, counsel for the Company emailed Weinreich reiterating his obligation to return all Company property to Dabney during the meeting, including the Laptop, and all Company paper files. (Exhibit 5). At the meeting, however, Weinreich refused to return the Laptop to Dabney, indicating that he had not brought the device with him because it was "unstable" and needed to remain plugged into an electrical outlet or the computer would crash.

---

[5] Weinreich now contends that he did not "resign." But, he concedes that he ceased working for the Company in September 2019, and that he told employees that he was leaving. FAC, ¶ 160.

AFDOCS/25504587.1

Thereafter, Company counsel made repeated demands for the return of the Laptop. (<u>Exhibit 6</u>). Greenfield's counsel proposed a process by which the Company would forensically segregate any privileged documents residing on the Laptop after its return. Weinreich's counsel rejected the proposal. (<u>Exhibit 7</u>).

C.  <u>Weinreich Creates an Unauthorized Forensic Image of the Company Laptop</u>.

On December 23, 2019, Weinreich informed Company counsel that he had provided the Laptop to Salt Lake Legal to create a forensics image in November 2019, two months after the Company's initial demand that the Laptop be returned to it. In his communication with the Company, Weinreich ***did not*** disclose that he had caused the device to be forensically wiped. (<u>Exhibit 8</u>). Dabney eventually received the Laptop on or about January 6, 2020. In the two months that passed between the Company's demand for the Laptop and the creation of the image, Weinreich easily could have altered or deleted information on the Laptop without detection.

On January 10, 2020, counsel for the Company emailed Weinreich's counsel demanding details relating to the unauthorized forensic work on the Laptop. Among other things, Company counsel requested that Weinreich provide a signed affidavit confirming that no information related directly or indirectly to Company business or activities had been deleted from the computer. (<u>Exhibit 9</u>). On January 14, 2020, Weinreich's counsel responded via letter indicating that an image had been prepared and that "personal" files had been removed from the Laptop. The letter did not include any affidavit from Weinreich and it did not disclose that the Laptop as returned to Greenfield had been ***forensically wiped clean,*** with a limited subset of Greenfield documents reinstalled after the fact. (<u>Exhibit 10</u>); <u>see also</u> Brady Aff.

On January 21, 2020, counsel for the Company sent a letter to Weinreich's counsel noting that the Company never agreed to allow Weinreich to disclose Company information to a third

6

party or to perform a forensic analysis of the computer. The Company demanded a full file listing of all information that Salt Lake Legal had accessed and examined, in order for Greenfield to determine what information may have been compromised. (Exhibit 11).  Weinreich's counsel did not respond to this request.

D. Weinreich Admits to Wiping and Spoliating the Company-Issued Laptop.

On February 16, 2022, in his Objections and Responses to Brooks' First Set of Interrogatories, Weinreich *for the first time*, admitted that the forensics company engaged by him to image the Greenfield device did not just remove his personal information, but *wiped the device clean* and reinstalled just over 590 documents from over two decades of Weinreich's work for the Company.[6] *See* Response to Interrogatory No. 19 (Exhibit 12, hereto). The Laptop was wiped *after* (1) Company counsel had explicitly instructed Weinreich not to wipe or alter the Laptop, and (2) Weinreich had filed this litigation. Notably, Weinreich does not indicate that he reinstalled or returned any Greenfield emails that resided on the Laptop before it was wiped.

E. Forensic Evidence Confirms that Weinreich Altered and/or Deleted Information.

A review of the Laptop as returned by Weinreich reveals that much of the original data from the device, and the associated metadata, has been altered or destroyed. All of the files on the Laptop as returned to Greenfield were housed in a folder titled "Greenfield Master File." *See* Affidavit of Tara Brady (Brady Aff., ¶ 7), (Exhibit 13, hereto). All of the files within the Greenfield Master File were copied to that folder on December 18, 2019, the same date that they were copied onto the device. Id. In total, there are 5,939 folders and subfolders in the "Greenfield Master File"

---

[6] In his response to Interrogatory No. 19, Weinreich states ". . . [O]n November 25, 2019, Weinreich delivered his Apple MacBook to Salt Lake Legal. Salt Lake Legal imaged the entire computer with MacQuistion, and made a complete Time Machine backup file. Salt Lake Legal has held the image and backup since the work was completed. *After creating the image and backup, Salt Lake Legal wiped all information from the computer and then restored the "Greenfield Master File," which contained Weinreich's Greenfield work-related files, back onto the computer before returning it to Weinreich*."

7

folder. Of those folders, 5,771 are empty and contain zero files. Id., ¶ 9. This is an unusual finding, which could indicate that documents resided in these folders at one time and were removed from these folders prior to being copied to the Laptop on December 18, 2019. Id.

The Greenfield Master File contains just 593 total files. Id., ¶ 8. There are no email files on the returned Laptop. 47 files and folders on the Laptop have "Record Changed" timestamps after December 18, 2019. Id., ¶ 10. It is not possible to know the exact nature of the interaction with these files from the device that was returned to Greenfield. However, these dates do indicate that someone interacted with these 47 files and folders after they were copied onto the Laptop. Id. The Laptop, which was already significantly altered by movement of files and folders, deletion of data, and ultimately wiping, was then altered even after December 18, 2019 by further interaction with these 47 files and folders with timestamps post-December 18, 2019. Id.

Finally, over 3,800 file paths extracted from a forensic image of the returned computer include the following description:

> "/Users/marcweinreich/Desktop/Greenfield Master File/ Greenfield--Another sample shell directory that appeared on desktop/Tronox--sample shell directory that appeared on desktop for reasons I do not understand. Moved this into GMF. ***Deleted others to simplify document retrieval for 3rd parties*** . . ."

(emphasis added). Id., ¶ 11. This naming convention on the file path suggests that Weinreich (or an agent acting on his behalf) deleted certain information from the device. Id., ¶ 12. Moreover, filesystem timestamps and system logs indicate that the folder names were created prior to the folders being copied onto the Laptop.  Id., ¶ 13. As such, it is reasonable to assume that the data populating these files was deleted *before* Salt Lake Legal preserved a forensic image. If this is the case, the information that was deleted would be irretrievably lost. This is because it would not be

preserved on the forensic image, and the device itself was purposefully wiped clean before it was returned. Id., ¶ 16.

Immense amounts of information relevant to this litigation (and important to the Company) has likely been lost as a result of Weinreich's wiping of the Laptop. The information missing from the Laptop as returned to the Company may include but is not limited to: (1) all files previously stored on the computer before it was wiped, (2) all metadata about these files, (3) information about file usage, (4) deleted but recoverable data (5) internet artifacts, (6) messaging, (7) system logs, and (8) application data, among other things. Id., at ¶ 17. The only way to determine some of the changes Weinreich made to the company-computer prior to his destruction of information would be to access the forensic image allegedly made by Salt Lake Legal prior to the wiping.[7] Id., at ¶ 18. To date, Weinreich has refused to produce or return the image.[8]

## II.     RELEVANT PROCEDURAL BACKGROUND

Brooks issued her First Request for Production of Documents and Things to Plaintiff Marc Weinreich on October 8, 2021 (the "Requests") (Exhibit 1). Weinreich served his responses to the Requests on November 29, 2021 (the "Responses") (Exhibit 14). The Requests sought, among other things, the full forensic image of the Company computer, as well as related communications and other data. The Requests also sought information relevant to the employee complaints that lead to the reorganization.

---

[7] Critically, it is not clear from Weinreich's statement in response to Interrogatory No. 19 whether information was deleted by him prior to the imaging of the device. Indeed, if Weinreich performed the deletions referenced in the file path names before he provided the laptop to Salt Lake Legal to be imaged, the data, and all associated metadata, would be unrecoverable due to Weinreich's actions. As noted above, over two months passed between Weinreich's resignation in September 2019 and the forensic imaging in November 2019, during which time Weinreich could have deleted or altered information without detection.

[8] Indeed, while employed by the Company, Weinreich was responsible for preparing employment agreements for Company employees, which included language restricting the use of Company confidential information and acknowledged that information belonged to the Company.

Certain, but not all, of the Responses state that "[s]ubject to and without waiving the objections above, Plaintiff will conduct a reasonably diligent search of the documents in his possession using search terms to be agreed upon by the parties and produce all non-privileged, *relevant,* and responsive documents*."* (emphasis added). (Exhibit 14). Thus, with respect to these requests, Weinreich has agreed to produce responsive non-privileged documents, *but only after* conducting a further review and sort for "relevance."

Counsel for the parties met telephonically on December 20, 2021 to discuss the deficiencies in Weinreich's responses, including the refusal to return the Laptop image and the inappropriate relevance objections. Despite committing to "follow up" on certain of the topics discussed, Weinreich did not provide any feedback for more than three weeks and then refused to amend its responses as requested by Defendants or to provide the forensic image of the Company Laptop.

**III.    ARGUMENT**

A.    Weinreich Should be Compelled to Produce the Full Forensic Image of His Greenfield-issued Laptop.

As set forth above, despite repeated requests, Weinreich has refused to produce critical information stored on and concerning his Company-issued Laptop to either Brooks or Greenfield. Therefore, in the Requests, Brooks seeks information relating to the Company-issued Laptop as follows:

- **Request No. 54.** All documents and communications concerning any deletion, alteration and/or alienation of information, files, and/or data from Your GETG-issued laptop.

- **Request No. 55.** All images You made of any information that was contained on Your GETG-issued laptop.

- **Request No. 56.** All communications with GETG concerning Your laptop after the date You terminated Your employment at GETG.

- **Request No. 57.** All communications with any IT or forensic vendor concerning Your GETG-issued laptop.

(Exhibit 1). After a conference between counsel for the parties, Weinreich has indicated that he will agree to:

- Produce the "Statement of Work" and "Chain of Custody Form" from Salt Lake Legal, the vendor that imaged and backed up the laptop, which shows the scope of the work done on the laptop and when it was completed;

- Produce the handful of emails between him and Salt Lake Legal that exist regarding the laptop; and

- "Conduct a reasonably diligent search of the documents in his possession using search terms to be agreed upon by the parties and produce all documents responsive to [Request 56]."

(Exhibit 15). Weinreich's response is manifestly insufficient.

Weinreich has continually refused to provide a copy of the actual image taken of his Greenfield-issued Laptop, claiming that any deleted documents were personal in nature or privileged. The small number of Greenfield related files that were returned on the Laptop – just 593 files associated with almost 20 years of employment by the Company – raise serious doubts about the veracity of his representations. Critically, Weinreich did not return any email files on the Laptop; however, in the course of discovery he has nevertheless produced emails from his Greenfield email account, plainly demonstrating that he retained these files for his use. In its efforts to address Weinreich's stated concerns, counsel for Defendants have twice proposed a protocol by which (1) a forensics vendor would create a file listing of all materials on the mirror image of the Laptop, (2) Weinreich would identify documents on that file listing which he contends are privileged or entirely personal, and (3) the image (without these allegedly personal or privileged files) would be returned to Defendants. Weinreich has refused to agree to the proposed protocol.

11

The Laptop at issue was provided by Greenfield for use in connection with Weinreich's work for the Company. As demonstrated by the proposed protocol, Defendants are not interested in privileged information that may exist on the device. However, all Company information and other data on the forensic image is the property of the Company, and Weinreich has no legal right to withhold it. Instead, Weinreich has wrongfully converted Company property including trade secret and confidential information, which must be returned forthwith.

The forensic image of the Laptop is the *only complete source* of information concerning the files and other information that existed on the Laptop prior to Weinreich's decision to wipe it. Brady Aff., ¶¶ 18-19. Without the return of the image, Defendants will have no access to critical metadata and no way of determining the extent of Company information Weinreich has stolen, altered or deleted.  Id. The forensic evidence now available to Defendants suggests that Weinreich carefully selected the Company information he wished to re-install onto the computer, and is now holding the only complete source of the remaining information captive. For all of the above-described reasons, Weinreich should be compelled to produce the full forensic image of his Greenfield-issued Laptop.

Weinreich also should be compelled to produce all communications concerning the Laptop including the deletion, alteration, or alienation of data.

B.    Weinreich Cannot Add a Second "Relevance" Review Before Producing Responsive Documents.

As set forth above, in many of the Responses, Weinreich states that he will "produce all non-privileged, ***relevant, and*** responsive documents." (emphasis added),[9] This form of response is entirely inappropriate. "[A] party may not unilaterally withhold information on relevance

---

[9] Out of 70 Requests, Weinreich adds a second "relevance" review to his agreement to produce responsive documents in 28 Responses. (Exhibit 14).

grounds after otherwise agreeing to produce a requested set of documents." *Johnson v. Kraft Foods N. Am., Inc*., 236 F.R.D. 535, 541 (D. Kan. 2006). Discovery gamesmanship of this sort leaves the requesting party unable to determine which documents are being produced and which are being withheld. It allows the producing party to conduct a second level relevance review, the extent and contours of which are ambiguous, subjective, and unknown to the requesting party.

Under the Fed R. Civ P. 34(b)(2)(C), as amended effective December 1, 2015, any objection "must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." The 2015 amendment was intended to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." *Sullivan v. Saint-Gobain Performance Plastics Corp*., 5:16-CV-125, 2019 WL 12323321, at *4 (D. Vt. June 10, 2019)(*quoting* Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note to 2015 amendment). Responses including a second level "relevance" review are impermissible. *Johnson*, 236 F.R.D., at 541; *see also Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *5 (E.D. Va. Dec. 23, 2019)("For reasons previously stated, it is improper for RapidCourt to unilaterally withhold information or documents that are responsive to a discovery request by stating that "all relevant, non-privileged" responsive information will be produced").

Weinreich has refused to respond to Defendants requests that he amend his responses to delete the reference to relevance or, at a minimum, identify the specific documents being withheld on grounds of relevance so that Brooks can move to compel production of such documents. Accordingly, a Court order is required.

C.      <u>Documents Responsive to Request No. 62 Must be Produced.</u>

Request No. 62 seeks "All documents and communications concerning any request or invitation by You to any current or former GETG employee to stay in Your home in Utah." As explained during the meet and confer between the parties, documents responsive to Request No. 62 are relevant to complaints made about Weinreich by certain female Greenfield employees. *e.g.,* Affidavit Of Tasha Lewis ¶ 4, and Affidavit of Jennifer Roberts ¶ 8. (<u>Exhibit 16</u> and <u>17</u>). These complaints, and many others, represent part of the reason underlying the Company's decision to reorganize the Multistate Trust in 2019. Weinreich contends in the FAC that the complaints were fabricated by Brooks and that the reorganization was part of a "conspiracy" to freeze him out of the Company. FAC, ¶¶ 80-104. Documents responsive to Request No. 62 are clearly relevant and must be produced.

## IV.    CONCLUSION

For each of the reasons set forth above, Brooks respectfully requests that this Court grant her Motion to Compel in its entirety and that the Court grant such other and further relief as the Court deems appropriate including the fees and costs associated with this motion.

14

Respectfully submitted,

Defendant,

CYNTHIA BROOKS

By her Attorneys,

*/s/ Nicholas J. Nesgos*
Nicholas J. Nesgos, BBO# 553177
Lauren C. Schaefer, BBO# 696628
ARENTFOX SCHIFF LLP
Prudential Tower
800 Boylston Street, 32rd Floor
Boston, MA 02199-8004
(617) 973-6100
Nicholas.nesgos@afslaw.com
Lauren.schaefer@afslaw.com

Dated: March 25, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, a copy of the foregoing was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

*/s/ Lauren C. Schaefer*
Lauren C. Schaefer

15

AFDOCS/25504587.1